UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

James Donald King, III,

        Plaintiff,

        v.

City of Chicago, Officer Kevin Coyne, Officer
Ryan Edwards, and Unknown Officers,

        Defendants.

No. 1:25-CV-01216

Judge Edmond E. Chang

MEMORANDUM OPINION AND ORDER

In September 2023, James King, III, was arrested near 123rd Street and Lowe Avenue in Chicago. He has filed this lawsuit against the City, Chicago police officers Kevin Coyne and Ryan Edwards, and other unknown officers, alleging violations of his constitutional rights.[1] *See* R. 26, First Am. Compl.[2]

The City and the officers have filed partial motions to dismiss King's claims for malicious prosecution under the Fourth Amendment, abuse of process, and *Monell* liability. *See* R. 41, Defs. Officers' Mot.; R. 43, Def. Chicago's Mot. For the reasons discussed in the Opinion, the motions are granted, and King's claims dismissed. But the dismissal of the claims for malicious prosecution and *Monell* liability are without

---

[1]This Court has subject matter jurisdiction over this federal-question case under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims, 28 U.S.C. § 1367(a).

[2]Citations to the record are "R." followed by the docket entry number and a page or paragraph number, if applicable.

prejudice for now, and King may file an amended complaint by March 11, 2026, if he believes that he can fix the defects in the original complaint.

## I. Background

The Court accepts all well-pleaded factual allegations in the First Amended Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

On the evening of September 17, 2023, James King, III, was walking home from his security job in full uniform. First Am. Compl. ¶¶ 1, 19. At the time, King was carrying his work firearm with all his valid paperwork for the weapon, including his Firearm Owner's Identification (FOID), his Permanent Employee Registration Card (PERC), and his Firearm Control Card. *Id.* ¶¶ 3, 20–21.

Chicago Police Department officers, including Kevin Coyne and Ryan Edwards, stopped King near Lowe Avenue and 123rd Street. First Am. Compl. ¶¶ 1, 17. When the officers stopped King, they claimed to see an "L"-shaped object in King's waistband. *Id.* ¶ 18. The officers searched King and found his work firearm. *Id.* ¶ 20. King explained to the officers that he had a right to carry the weapon because he worked for a private security firm and showed them his FOID, PERC, and Firearm Control cards. *Id.* ¶ 21. King alleges that the CPD officers deceptively informed him that they could not pull his information in the "system" using those documents. *Id.* ¶ 4. The officers told King that he had to go to the police station with them to verify his identity. *Id.* When King arrived at the station, he was arrested and charged with

2

a felony offense. *Id.* King alleges that he had to remove his security uniform and wear someone else's clothing to take his mugshot. *Id.* ¶ 5.

To defend himself against the charges, King hired counsel, filed a motion to dismiss, and attended a full hearing on the motion. First Am. Compl. ¶ 6. On December 7, 2023, the Cook County State's Attorney's Office dismissed all charges against King. *Id.* King alleges that he has still not been able to regain possession of his work firearm and magazines. *Id.* ¶ 7.

According to King, all of this had consequences: King alleges that the arrest and prosecution led him to be unable to work, which led to lost wages and financial struggles. First Am. Compl. ¶¶ 25–26. When King returned to his job, it was not in the same capacity as before, and his salary was reduced significantly due to his inability to carry a firearm. *Id.* ¶ 26. So King brought this lawsuit. He brings a claim for false arrest in violation of the Fourth Amendment, 42 U.S.C. § 1983, and state common law against the police officers. *Id.* ¶¶ 28–37. King also brings claims for malicious prosecution and abuse of process under the Fourth Amendment against the officers.[3] *Id.* ¶¶ 39–50; R. 58, Pl.'s Resp. to Officers at 3, 5 (specifying Fourth Amendment basis for malicious-prosecution and abuse of process claims). King also brings a *Monell* claim against the City, First Am. Compl. ¶¶ 51–54, along with a claim for indemnification against the City, *id.* ¶¶ 55–57.

---

[3]In addition to Coyne and Edwards, King also sued unknown police officers. But King has not yet moved to name any other officers.

3

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 555 (cleaned up).[4] This rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

A Rule 12(b)(6) motion "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Factual allegations are entitled to the assumption of truth, as opposed to mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

### III. Analysis

### A. Malicious Prosecution (Count Two)

King alleges that officers Coyne and Edwards are liable for malicious prosecution under the Fourth Amendment. First Am. Compl. ¶¶ 39–45; Pl.'s Resp. to Officers at 3. On this claim, at issue are King's allegations that the officers instituted and continued legal proceedings against him despite an alleged lack of evidence. *Id.* ¶¶ 40–41.

To determine the elements of a federal malicious-prosecution claim, federal courts look to "the elements of the most analogous tort as of 1871 when § 1983 was enacted." *Thompson v. Clark*, 596 U.S. 36, 43 (2022). Here, the most analogous tort is the tort of malicious prosecution. *Neita v. City of Chicago*, 148 F.4th 916, 939 (7th Cir. 2025). Based on that common law tort, the elements of a Fourth Amendment malicious-prosecution claim are:

> (i) the suit or proceeding was instituted without any probable cause; (ii) the motive in instituting the suit was malicious, which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution terminated in the acquittal or discharge of the accused.

*Id.* (citing *Thompson*, 596 U.S. at 44). But there is one other element of this type of Fourth Amendment claim, and it is crucial to King's case: "Because this claim is housed in the Fourth Amendment, the plaintiff also has to prove that the malicious prosecution resulted in a *seizure* of the plaintiff." *Thompson*, 596 U.S. at 43 n.2 (emphasis added).

King fails to adequately plead that the allegedly malicious prosecution "resulted in [King's] seizure," *Neita*, 148 F.4th at 939 (quoting *Thompson*, 596 U.S. at 43 n.2)), that is, a seizure *beyond* the initial arrest and detention at the police station. Remember that King has a separate and distinct claim for *false arrest*, set forth in Count One and not targeted by the dismissal motions. For the malicious-prosecution claim, however, all that King alleges is that the officers instituted and continued *legal proceedings* against him without probable cause. First Am. Compl. ¶¶ 40, 43; Pl.'s Resp. to Officers at 3. King contends that he was seized pursuant to legal process because he was "prosecuted for over four months, which necessarily involved court appearances and other legal obligations that restricted his liberty" and "imposed significant restrictions on [his] freedom of movement." Pl.'s Resp. to Officers at 4.

This falls short of what a Fourth Amendment malicious-prosecution claim requires to qualify as a seizure. In *Neita*, the Seventh Circuit held that "having to post bond, appear in court to defend [oneself], and endure the loss of [a] pet" did not amount to an unreasonable seizure of the plaintiff under the Fourth Amendment. *Neita*, 148 F.4th at 939 (citing *Thompson*, 596 U.S. at 43 n.2)). Like the plaintiff in *Neita*, King does not allege "that he was … detained even after the commencement of legal process."[5] *Id.* at 939. Here, the officers' motion asserts that presumably King

---

[5]In their motion to dismiss, the officers argue that the Seventh Circuit held, in *Mitchell v. Doherty*, that "legal process begins when a judge, relying on a criminal complaint, finds probable cause for [a] warrantless arrest." Officers' Mot. at 3 (citing 37 F.4th 1277, 1283 (7th Cir. 2022)). To the extent that the officers rely on the start of legal process to definitively cut off Fourth Amendment claims (though it is not clear that the officers are doing that), that was not the holding in *Mitchell*. Indeed, *Mitchell* explicitly explained that *Manuel v. City of Joliet*, 580 U.S. 357 (2017), rejected that rule and the Supreme Court instead held that the

"was released at his bond hearing the day after arrest," Officers' Mot. at 3, and King does not allege to the contrary in the First Amended Complaint or his response brief.

Without outright detention to rely on, King points only to attendance at required court hearings and standard travel restrictions. Put simply, however, those restrictions on liberty do not qualify as a Fourth Amendment seizure. The Seventh Circuit considered this very question in *Bielanski v. County of Kane*, 550 F.3d 632 (7th Cir. 2008). In *Bielanski*, the plaintiff argued that she was seized for Fourth Amendment purposes because she was compelled by process to attend court hearings, she was required to obtain permission of the court before leaving the state, and she was required to submit to an interview with a probation officer. *Id.* at 642. The Seventh Circuit rejected the argument, explaining that "a summons alone does not equal a seizure for Fourth Amendment purposes," and that the travel restriction was "at most, a precursor to a possible seizure rather than a seizure itself." *Id.*; *see also Mitchell v. City of Elgin*, 912 F.3d 1012, 1016–17 (7th Cir. 2019) (acknowledging that "pretrial release might be construed as a 'seizure' for Fourth Amendment purposes if the conditions of that release impose significant restrictions on liberty," but expressing "misgivings about construing a simple obligation to appear in court—a uniform condition of any pretrial release—as a 'seizure' for Fourth Amendment purposes"). [6] Here,

Fourth Amendment "establishes the minimum constitutional 'standards and procedures' not just for arrest but also for ensuing 'detention,'" and that "pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case." *Id.* at 365–67.

[6] It is worth noting that the officers also cite *Smith v. City of Chicago*, 3 F.4th 332, 341–42 (7th Cir. 2021), for the proposition that bond conditions generally do not amount to a

all that King alleges is that his prosecution resulted in court appearances and un-specified restrictions on his freedom of movement. First Am. Compl. ¶ 45; Pl.'s Resp. to Officers at 4. Under *Bielanski*, these allegations fall short of adequately pleading a Fourth Amendment seizure. For now, the dismissal of this claim is without preju-dice to give King a chance to allege (if he can) pretrial-release conditions so severe that they qualify as a seizure under the Fourth Amendment.

## B. Abuse of Process (Count Three)

King also purports to advance a claim for "abuse of process" under § 1983. First Am. Compl. ¶¶ 46–50. King alleges that the officers had an ulterior purpose or motive in bringing the felony charge against him. *Id.* ¶¶ 47–48. Aside from not explicitly setting forth in the First Amended Complaint what facts underlie this claim, the pleading also fails to identify what federal constitutional right was violated. Section 1983 authorizes causes of action only for deprivation of rights "secured by the Consti-tution and laws …." 42 U.S.C. § 1983. So King must premise the abuse-of-process claim on a specific federal constitutional right, and do so in a way that makes sub-stantive sense.

In King's response brief, he attempts to premise the abuse-of-process claim on the Fourth Amendment. Pl.'s Resp. to Officers at 5–6. For factual support, King relies

---

Fourth Amendment seizure. Officers' Mot. at 3. But that opinion was *vacated*—as the officers correctly note in the citation to the Seventh Circuit case—on other grounds by the Supreme Court. 142 S. Ct. 1665 (2022); *see* Officers' Mot. at 3. It is one thing to rely on an opinion that was later overruled on other grounds by a *separate* case; it is quite another to rely on an opinion that is vacated by a higher court.

8

on the allegation that the officers made him change out of his security-guard uniform before taking his booking photo. *Id.* (citing First. Am. Compl. ¶¶ 4–5, 47–48). But King does not explain how that particular act of misconduct amounts to some type of Fourth Amendment claim that is somehow a standalone abuse-of-process claim that is independent of the seizure itself. Indeed, the Seventh Circuit has expressed skepticism over the viability of invoking the Fourth Amendment as the basis for an abuse-of-process claim. *Hart v. Mannina*, 798 F.3d 578, 594 (7th Cir. 2015). In part, the Seventh Circuit explained that "we do not normally scrutinize the subjective motivations of law enforcement officials under the Fourth Amendment." *Id.* "Yet that is what we would have to do to determine whether any of the defendants had an 'ulterior purpose' in participating in the criminal case against" the plaintiff. *Id.* There is thus a mismatch between a Fourth Amendment claim's evaluation for *objective* reasonableness only and an abuse-of-process claim's evaluation of an officer's *subjective* motive. *Id.*[7] King's response brief grapples with none of this.

Nor does King rely on any other federal constitutional provision for the substantive content of the abuse-of-process claim. *See* Pl.'s Resp. to Officers at 4–5. The only other potential candidate is the Due Process Clause of the Fourteenth

---

[7]In addition to this mismatch between objective reasonableness and subjective motive, the Seventh Circuit also relied on the then-governing point that the Fourth Amendment's protections "drop out of the picture after the detainee has received legal process, typically an arraignment." *Hart*, 798 F.3d at 594. But as noted earlier in this Opinion, after the Supreme Court's decision in *Manuel v. City of Joliet*, that is no longer accurate: the Fourth Amendment may form the basis for a pretrial-detention claim even after an arraignment. *See supra* n.5 (explaining *Manuel v. City of Joliet*, 580 U.S. at 358; and *Mitchell v. Doherty*, 37 F.4th at 1283).

Amendment. But it is not up to the Court to craft an argument for King based on due process. In any event, like the plaintiff in *Hart*, King's booking-photo allegations "in this case are substantively identical to those supporting his claims for false arrest," and thus do not amount to a separate abuse-of-process claim (no matter the substantive content of that claim). *Hart*, 798 F.3d at 595. Put another way, the alleged booking-photo misconduct might very well be relevant evidence of the false-arrest claim, but it is not a standalone claim. Indeed, even the officers argue that the abuse-of-process claim is duplicative of the Fourth Amendment false-arrest claim (Count One). Officers' Mot. at 3; First Am. Compl. ¶¶ 28–37. King disagrees, arguing that the false-arrest claim focuses on the initial seizure only, whereas the booking-photo misconduct happened after the initial arrest. Pl.'s Resp. to Officers at 5–6.

King is generally correct that malicious-prosecution claims or abuse-of-process claims (when properly brought under state common law) typically target post-arrest conduct. "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." *Wallace v. Kato*, 549 U.S. 384, 390 (2007) (cleaned up). But King does not allege that the officers' attempt to alter King's appearance for the mugshot happened *after* the arraignment. So King's conception of the abuse-of-process claim fails even on its own terms.

This is not to say that the alleged booking-photo misconduct would have been irrelevant to the Fourth Amendment malicious-prosecution claim (if King had been

seized after the charges were brought). *Cf. Katz-Crank v. Haskett*, 843 F.3d 641, 649 n.6 (7th Cir. 2016) (noting that the plaintiff's "federal abuse-of-process claim is also a repackaged claim for malicious prosecution, so we do not need to separately address it"). Indeed, the alleged misconduct might even have been relevant to a state law malicious-prosecution claim (had that claim been pleaded). But the upshot is that King has offered no viable basis for the federal abuse-of-process claim. Because any amendment would be futile, this claim must be dismissed with prejudice.

### C. Liability Under *Monell* (Count Four)

#### 1. Custom or Practice

Lastly, King argues that the City is liable under 42 U.S.C. § 1983 for the officers' alleged violations of his constitutional rights. First Am. Compl. ¶¶ 52, 54. King alleges that the City has a "code of silence" covering up false arrests amounting to a widespread custom or practice, and the code of silence caused the constitutional violations. *Id.* ¶¶ 53–54; R. 56, Pl.'s Resp. to City at 3.

A municipal corporation can be held liable for civil rights violations under § 1983 in three ways:

> A local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental *practice or custom* that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority.

*Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (emphasis added); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). To

adequately state a *Monell* claim, the plaintiff must allege "that an official policy or custom not only caused the constitutional violation, but was 'the moving force' behind it." *Est. of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). To be clear, there is no heightened pleading standard for *Monell* claims. In evaluating a defendant's motion to dismiss for failure to state a claim, "a court must construe pleadings liberally, and mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985). But the Court need only accept King's *factual* allegations as true—legal conclusions are entitled to no such deference. *Iqbal*, 556 U.S. at 678.

King brings his claim under the second pathway to *Monell* liability, alleging that the City has a widespread but unofficial custom or practice of a "code of silence," under which officers fail to report or to intervene in false arrests like King's. Pl.'s Resp. to City at 3. King alleges that the code of silence is evidenced by the officers' failure to intervene in his arrest, the deceptive review of his credentials on the squad-car computer, and the "attempt to obscure [his] professional status by changing his clothing" for the booking photo. *Id.*; First Am. Compl. ¶ 53.

When a plaintiff relies on the custom-or-practice form of *Monell* liability, the plaintiff must adequately plead that the unwritten practice "is so permanent and well-settled" that it has the "force of law." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Given the high substantive bar set by that definition, a plaintiff must generally allege multiple incidents of wrongdoing to adequately plead that the custom

12

has become sufficiently widespread and well-settled. *Thomas*, 604 F.3d at 303. This requirement is meant to ensure that the plaintiff has identified "a true municipal policy … not a random event." *Calhoun*, 408 F.3d at 380; *see also Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981). Courts are wary of *Monell* claims based on single events because those one-off claims veer too close to imposing *respondeat superior* liability on municipalities, which was explicitly rejected in *Monell*. *Monell*, 436 U.S. at 691; *Powe*, 664 F.2d at 650–51.

Here, the *Monell* claim fails because King describes only one event: his arrest by officers on September 17, 2023. First Am. Compl. ¶¶ 1, 4–5. This single event is not enough to adequately allege a municipal custom or practice. *Thomas*, 604 F.3d at 303. King naturally contends that the "code of silence" is not limited to his arrest, but the First Amended Complaint describes only this one event. First Am. Compl. ¶¶ 17–24; Pl.'s Resp. to City at 3. He also contends that the "code of silence" directly and proximately caused his unlawful arrest and the resulting injuries, but he offers no facts in support of this allegation, such as descriptions of other officers engaging in similar practices. First Am. Compl. ¶ 54; Pl.'s Resp. to City at 5. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. … Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (cleaned up). Without concrete facts, King's general assertions collapse into the mere elements of a *Monell* claim.

It is true, as King argues, that in some circumstances a plaintiff *can* plausibly allege a *Monell* claim even though the operative complaint only sets forth events that happened to the plaintiff. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016). But those cases generally "include additional context supporting widespread policy inferences." *Washington v. City of Chicago*, 2025 WL 1262569, at *3 (N.D. Ill. May 1, 2025). For example, in *White*, the plaintiff alleged that police officers obtained his arrest warrant using a "standard printed form that does not require specific factual support." 829 F.3d at 844. Not surprisingly, the Seventh Circuit explained that the use of the standard form gave rise to the reasonable inference that other individuals had been arrested using that form. In contrast, here King fails to offer any additional context from which to infer that a code of silence caused his arrest. So King has failed to adequately please the existence of a City custom or practice that tolerates false arrests. The *Monell* claim is dismissed, for now without prejudice because the claim has not previously been dismissed.

## 2. Deliberate Indifference & Causation

Given the dismissal, there is no need to address the parties' arguments on two other elements of the *Monell* claim. But because King might try to re-plead the *Monell* claim, it is worth briefly providing guidance on the two elements. First, King argued that he adequately alleged that the City acted with "deliberate indifference" to known or obvious risks of false arrests. Pl.'s Resp. to City at 4–5. According to King, "final policymakers, such as the CPD Superintendent or other high-ranking officials, knew

or should have known of the risk of unconstitutional arrests and failed to act." *Id.* at 5.

The Court is skeptical that King adequately alleged deliberate indifference by final policymakers. "[A] plaintiff bringing a *Monell* claim against a municipality must show that the policy or custom demonstrates municipal fault." *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022) (cleaned up). When a plaintiff does not allege that the municipality took direct action, but instead alleges only—as here— that the municipality *caused* an employee to violate a federal right, the plaintiff must adequately allege "that it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)). This is a high bar to clear, and negligence or even gross negligence is not enough. *Id.* Here, the general allegations of knowledge or obviousness have no concrete factual content. This would have been an independent ground to dismiss the *Monell* claim.

Second, to successfully plead a *Monell* claim, plaintiffs must adequately allege that the municipality's action was the "moving force" behind the violation. *Brown*, 520 U.S. at 404. To satisfy this standard, the plaintiff must plausibly allege a "direct causal link" between the challenged municipal action and the violation of his constitutional rights. *Id.* Given the inadequacy of the allegations on the code of silence and on deliberate indifference, it is not surprising that King also fails to adequately allege

15

that the "code of silence" caused the false arrest. King only offers legal conclusions, which the Court need not accept as true. Without more, King cannot move forward on the *Monell* claim based on the current conclusory allegations.

## IV. Conclusion

The officers' motion to dismiss, R. 41, is granted: the claim for malicious prosecution is dismissed without prejudice, and the claim for abuse of process is dismissed with prejudice. The City's motion to dismiss the *Monell* claim, R. 43, is granted too, but the dismissal is without prejudice.

If King wishes to try to fix the defects identified in this Opinion, then he must file a second amended complaint by March 11, 2026. (The Court is skeptical that the defects can be fixed.) If King does not file an amended complaint by the deadline, then the dismissals will convert to a dismissal with prejudice. It appears that the parties have finished non-*Monell* fact discovery, which means the false-arrest claim against the officers (and the indemnification claim against the City) are ready for either dispositive-motion practice, a settlement conference, or a trial. The parties shall file a status report proposing the next step of the litigation on or before March 13, 2026.

ENTERED:


    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: February 25, 2026

16